IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| IN THE MATTER OF: | ) | |
| | ) | |
| JOHN WESLEY STEPHENS, | ) | |
| | ) | CASE NO. BK10-81870-TLS |
| Debtor(s). | ) | A10-8056-TLS |
| OMAHA JOINT ELECTRICAL APPRENTICESHIP & TRAINING COMMITTEE, | ) ) ) | |
| | ) | |
| Plaintiff, | ) | CHAPTER 7 |
| | ) | |
| vs. | ) | |
| | ) | |
| JOHN WESLEY STEPHENS, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

This matter is before the court on the plaintiff's amended motion for summary judgment (Fil. No. 23). No resistance was filed. Thomas J. Freeman represents the plaintiff. Evidence was filed and, pursuant to the court's authority under Nebraska Rule of Bankruptcy Procedure 7056-1, the motion was taken under advisement without oral arguments.

The motion is denied.

The plaintiff seeks to have the debt owed to it for certain educational loans excepted from discharge pursuant to 11 U.S.C. § 523(a)(8). The debtor, John Stephens, signed scholarship loan agreements and promissory notes with the Omaha Joint Electrical Apprenticeship and Training Committee ("OJEATC") for the cost of three years of training to become a licensed electrician. The loan agreements' terms anticipate that the participant will work as a journeyman electrician with a union employer so his union contributions will pay for the training. For each year of employment with a union electrician, the participant receives credit against the cost of training. Five years of such employment would result in credit for the full amount of the loan. However, accepting employment with a non-union employer in the electrical industry would constitute an immediate breach of the loan agreement, rendering all amounts due and owing on the loan immediately due and payable.

Mr. Stephens completed his training and is working as an electrician. He initially worked for a union employer, but subsequently took a job with a non-union electrician, which was a breach of the loan agreements and rendered all amounts immediately due in cash. OJEATC was unable to collect from Mr. Stephens, so it filed a state court lawsuit and obtained a judgment of $9,794.76 on May 13, 2010. To collect the judgment, OJEATC obtained a garnishment order of $300 per month. Thereafter, Mr. Stephens filed his petition for relief under Chapter 7 of the Bankruptcy Code. The

plaintiff filed this adversary proceeding on September 24, 2010, and now moves for summary judgment.

Summary judgment is appropriate only if the record, when viewed in the light most favorable to the non-moving party, shows there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c) (made applicable to adversary proceedings in bankruptcy by Fed. R. Bankr. P. 7056); *see, e.g.*, *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986); *Aviation Charter, Inc. v. Aviation Research Group/US*, 416 F.3d 864, 868 (8th Cir. 2005); *Ferris, Baker Watts, Inc. v. Stephenson (In re MJK Clearing, Inc.)*, 371 F.3d 397, 401 (8th Cir. 2004).

To withstand a motion for summary judgment, the non-moving party "has an affirmative burden to designate specific facts creating a triable controversy." *Crossley v. Georgia-Pac. Corp.*, 355 F.3d 1112, 1113 (8th Cir. 2004) (internal citations omitted). Failure to oppose a basis for summary judgment constitutes a waiver of that argument. *Satcher v. Univ. of Ark. at Pine Bluff Bd. of Trs.*, 558 F.3d 731, 734-35 (8th Cir. 2009). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

The following facts are uncontroverted:

1. The OJEATC is sponsored by the International Brotherhood of Electrical Workers Local 22 and the Omaha Chapter of the National Electrical Contractors Association.

2. Mr. Stephens signed an "apprentice scholarship loan agreement" and "apprentice promissory note" with the OJEATC on September 7, 2005, promising to pay OJEATC $2,657 "for value received in the form of education and training in the specialized skills necessary for employment in the Electrical Industry" for the 2005-06 school year.

3. He signed a similar scholarship loan agreement and promissory note with the OJEATC on September 5, 2006, promising to pay $2,288 for the 2006-07 school year, under the same terms and conditions described above.

4. He signed a similar scholarship loan agreement and promissory note with the OJEATC on October 8, 2007, promising to pay $2,342 for the 2007-08 school year, under the same terms and conditions described above.

5. Mr. Stephens completed his training and was placed with a union employer in the summer of 2008. His employment was terminated when he was found to have falsified time cards. The union offered to find another position for him if he apologized to the shop owner. He refused to apologize and found employment at a non-union shop.

6. OJEATC filed a lawsuit in the County Court of Douglas County, Nebraska, to collect the amount due on the loans. Judgment was entered on May 13, 2010, in favor of OJEATC in the amount of $8,894.76 plus court costs, and attorney fees of $900.

7. Mr. Stephens filed his Chapter 7 bankruptcy petition on June 25, 2010.

Debts for student loans generally are not dischargeable in bankruptcy unless the debtor can show that paying such a debt would impose an undue hardship on him and his dependents.[1] Exceptions to discharge are usually construed narrowly against the creditor and liberally against the debtor. *Islamov v. Ungar (In re Ungar)*, 429 B.R. 668, 673 (B.A.P. 8th Cir. 2010).

The first matter to be decided is whether the judgment debt at issue here is student loan debt within the purview of § 523(a)(8). By its terms, the statute applies to educational benefit overpayments or loans made, insured or guaranteed by the government, or loans made under programs funded by nonprofit organizations or the government either in whole or in part, and obligations to repay funds received as an educational benefit, scholarship, or stipend. The term "loan" commonly connotes money transferred to another with the expectation of repayment. *See U.S. Dep't of Health & Human Servs. v. Smith*, 807 F.2d 122, 124-25 (8th Cir. 1986).

In the present case, there is no indication that OJEATC actually transferred funds to the debtor for his training. Rather, it appears that the training was advanced to Mr. Stephens with the expectation that he would work for a union electrician, with the employer's union contributions reimbursing the OJEATC for his training. Only if the debtor went to work for a non-union employer or left the electrical industry altogether would he be required to pay back in cash the value of his training. For purposes of § 523(a)(8), however, a transfer of money is unnecessary. A college's extension of credit to a student for tuition, books, and other expenses constitutes a loan within the

---

[1] The Bankruptcy Code provides that a bankruptcy discharge of debts does not discharge a debtor from any debt —

. . .

(8) unless excepting such debt from discharge under this paragraph would impose an undue hardship on the debtor and the debtor's dependents, for —
    (A) (i) an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution; or
        (ii) an obligation to repay funds received as an educational benefit, scholarship, or stipend; or
    (B) any other educational loan that is a qualified education loan, as defined in section 221(d)(1) of the Internal Revenue Code of 1986, incurred by a debtor who is an individual[.]

11 U.S.C. § 523(a)(8).

meaning of the discharge exception for student loan debt, even though no money actually changes hands. *Johnson v. Missouri Baptist Coll. (In re Johnson)*, 218 B.R. 449 (B.A.P. 8th Cir. 1998).

Moreover, while the vast majority of student loan dischargeability cases deal with educational financing to attend post-secondary institutions of higher learning, trade-sponsored training programs can also fit within the statute. *See*, *e.g.*, *Joint Apprenticeship Comm. of United Ass'n Local Union No. 307 v. Rezendes (In re Rezendes)*, 324 B.R. 689 (N.D. Ind. 2004) (plumbing and pipefitting training); *Indiana/Kentucky Reg'l Council of Carpenters Joint Apprenticeship & Training Comm. v. Kesler (In re Kesler)*, 401 B.R. 356 (Bankr. S.D. Ill. 2009) (carpentry training); *Zlotopolski v. Dressel (In re Dressel)*, 212 B.R. 611 (Bankr. E.D. Mo. 1997) (sheet metal training); and *Plumbers Joint Apprenticeship & Journeyman Training Comm. v. Rosen (In re Rosen)*, 179 B.R. 935 (Bankr. D. Or. 1995) (plumbing training).

All four of those cases arose from factual situations similar to the case at bar. The majority of the cases found that debts for training in the trades are educational loans that may be excepted from discharge if the debtor is unable to establish undue hardship. *See Kesler*, *Dressel*, and *Rosen*. The only case to hold that such a debt is not in the nature of an educational loan is *Rezendes*. The *Rezendes* court based its ruling on its interpretation of Seventh Circuit precedent and on a repayment provision in the loan agreement. The *Rezendes* court concluded that no "loan" existed because the factors necessary for a loan, as articulated in *In re Chambers*, 348 F.3d 650 (7th Cir. 2003) (holding that a loan requires money to change hands and the parties to have a prior or contemporaneous agreement to pay later for an extension of credit now), did not exist under the fact of *Rezendes*. Specifically, the loan agreement between Rezendes and the training committee forgave the loan if the participant did not work in the plumbing and pipefitting industry. The court viewed this exception to repayment as fatal to "a prior or contemporaneous agreement to pay later," finding that the repayment obligation arose not from the agreement, but from entering the plumbing and pipefitting trade. *Rezendes* distinguished *Rosen* and *Dressel* because each of those debtors had breached an agreement not to work for a non-union employer and were therefore obligated to repay the loan in cash. The agreements in *Rosen* and *Dressel* did not contain a provision for forgiving the debt if the participants left the industry. In other words, according to *Rezendes*, the plumbing and pipefitting training program's purpose was not to provide participants with an educational loan, but rather was to provide trained individuals as union employees in the industry.

These cases are not binding on this court, but they do provide a framework for analyzing this case. Mr. Stephens received training for which he was expected to pay OJEATC back either in work or in cash. He has not done so. Pursuant to the *Johnson* case cited above, the debt at issue constitutes the type of loan governed by § 523(a)(8). The issue then becomes whether the debt may be discharged.

A debtor seeking discharge of an educational loan debt bears the burden of proving, by a preponderance of the evidence, that repayment of those loans would impose an undue hardship on him and his dependents. *Parker v. Gen. Revenue Corp. (In re Parker)*, 328 B.R. 548, 552 (B.A.P. 8th Cir. 2005).

"Undue hardship" is not defined in the Bankruptcy Code, so courts have devised their own methods of determining whether an undue hardship exists. In the Eighth Circuit, the "totality of the circumstances" test is used. *Educ. Credit Mgmt. Corp. v. Jesperson (In re Jesperson)*, 571 F.3d 775, 779 (8th Cir. 2009); *Long v. Educ. Credit Mgmt. Corp. (In re Long)*, 322 F.3d 549, 553 (8th Cir. 2003) (citing *Andrews v. South Dakota Student Loan Assistance Corp. (In re Andrews)*, 661 F.2d 702 (8th Cir. 1981)). This requires an evaluation of the debtor's past, present, and reasonably reliable future financial resources; a calculation of the reasonable necessary living expenses of the debtor and his dependents; and any other circumstances unique to the particular bankruptcy case. *Jesperson* at 779 (citing *Long*, 322 F.3d at 554).

> Simply put, if the debtor's reasonable future financial resources will sufficiently cover payment of the student loan debt — while still allowing for a minimal standard of living — then the debt should not be discharged. Certainly, this determination will require a special consideration of the debtor's present employment and financial situation — including assets, expenses, and earnings — along with the prospect of future changes — positive or adverse — in the debtor's financial position.

*Long*, 322 F.3d at 554-55; *Reynolds v. Penn. Higher Educ. Assistance Agency (In re Reynolds)*, 425 F.3d 526, 532 (8th Cir. 2005).

The OJEATC challenges some of the expenses contained in the debtor's schedules, and asserts that he is not maximizing his income because he could earn higher wages by working for a union employer. Mr. Stephens has not responded to this motion, but his answer to the complaint indicates that some of his monthly expenses have increased since the petition date and that a newborn was expected to join his household in December 2010. These changes in circumstances necessitate a trial wherein the court can make factual findings as to undue hardship. The trial is currently set for 9 a.m. on Tuesday, March 22, 2011, in Omaha. The debtor bears the burden of proving that repayment of this debt will create an undue hardship for him and his dependents, so Mr. Stephens should be prepared to testify in detail about his current assets, earnings, and expenses, as well as any likely future changes in his financial position.

IT IS ORDERED: The plaintiff's amended motion for summary judgment (Fil. No. 23) is denied.

DATED: February 17, 2011.

BY THE COURT:

/s/ Thomas L. Saladino
Chief Judge

Notice given by the Court to:
    John Wesley Stephens
    *Thomas J. Freeman
    U.S. Trustee

Movant (*) is responsible for giving notice to other parties if required by rule or statute.