IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| IN THE MATTER OF: | ) | CASE NO. BK10-81870-TLS |
| | ) | |
| JOHN WESLEY STEPHENS, | ) | CH. 7 |
| | ) | |
| Debtor. | ) | |
| OMAHA JOINT ELECTRICAL | ) | ADV. NO. A10-8056-TLS |
| APPRENTICESHIP TRAINING | ) | |
| COMMITTEE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| JOHN WESLEY STEPHENS, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Trial was held in Omaha, Nebraska, on March 22, 2011, on Plaintiff's complaint to determine dischargeability of debt under 11 U.S.C. § 523(a)(8). Thomas J. Freeman appeared for Plaintiff, Omaha Joint Electrical Apprenticeship Training Committee, and Defendant, John Wesley Stephens, appeared pro se. At the conclusion of the trial, this matter was taken under advisement.

The issues in this adversary proceeding were previously presented to the court on an amended motion for summary judgment filed by Plaintiff (Fil. #23). On February 17, 2011, this court issued its order (Fil. #26) denying the amended motion for summary judgment. As part of that order, the court determined that the debt at issue in this case does constitute the type of loan governed by 11 U.S.C. § 523(a)(8). Rather than restate all of the facts and issues resolved in that order (Fil. #26), such order is hereby incorporated into this order in its entirety.

The remaining issue to be decided in this case is whether Mr. Stephens is entitled to a discharge of the debt owed to Plaintiff under 11 U.S.C. § 523(a)(8). In that section, the Bankruptcy Code provides that a bankruptcy discharge does not discharge a debtor from any debt:

> (8) unless excepting such debt from discharge under this paragraph would impose an undue hardship on the debtor and the debtor's dependents, for —
>     (A)(i) an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution; or
>         (ii) an obligation to repay funds received as an educational benefit, scholarship, or stipend; or
>     (B) any other educational loan that is a qualified education loan, as defined in section 221(d)(1) of the Internal Revenue Code of 1986, incurred by a debtor who is an individual[.]

A debtor seeking discharge of an educational loan debt bears the burden of proving, by a preponderance of the evidence, that repayment of the debt would impose an undue hardship on him and his dependents. *Parker v. Gen. Revenue Corp. (In re Parker)*, 328 B.R. 548, 552 (B.A.P. 8th Cir. 2005).

"Undue hardship" is not defined in the Bankruptcy Code, so courts have devised their own methods of determining whether an undue hardship exists. In the Eighth Circuit, the "totality of the circumstances" test is used. *Educ. Credit Mgmt. Corp. v. Jesperson (In re Jesperson)*, 571 F.3d 775, 779 (8th Cir. 2009); *Long v. Educ. Credit Mgmt. Corp. (In re Long)*, 322 F.3d 549, 553 (8th Cir. 2003) (citing *Andrews v. South Dakota Student Loan Assistance Corp. (In re Andrews)*, 661 F.2d 702 (8th Cir. 1981)). This requires an evaluation of the debtor's past, present, and reasonably reliable future financial resources; a calculation of the reasonable necessary living expenses of the debtor and his dependents; and any other circumstances unique to the particular bankruptcy case. *Jesperson* at 779 (citing *Long*, 322 F.3d at 554).

> Simply put, if the debtor's reasonable future financial resources will sufficiently cover payment of the student loan debt – while still allowing for a minimal standard of living – then the debt should not be discharged. Certainly, this determination will require a special consideration of the debtor's present employment and financial situation – including assets, expenses, and earnings – along with the prospect of future changes – positive or adverse – in the debtor's financial position.

*Long*, 322 F.3d at 554-55; *Reynolds v. Penn. Higher Educ. Assistance Agency (In re Reynolds)*, 425 F.3d 526, 532 (8th Cir. 2005).

As discussed more fully in the order denying summary judgment (Fil. #26), the indebtedness owed by Mr. Stephens represents the cost of three years of training to become a licensed electrician. Essentially, Plaintiff advanced the cost of his training with the understanding that he would work as a union electrician for a period of time after completion of his training. However, when a trainee accepts employment with a non-union employer in the electrical industry, it constitutes an immediate breach of the agreements, and all amounts incurred for training become immediately due and payable. Mr. Stephens completed his training and worked as a union electrician for a period of time. However, Mr. Stephens subsequently accepted employment with a non-union employer, which resulted in Plaintiff seeking and obtaining a state court judgment against him in the amount of $9,794.76 on May 13, 2010. The issue to be determined is whether excepting that debt from discharge would constitute an undue hardship on Mr. Stephens and his dependents.

Mr. Stephens is 25 years old and is paid approximately $16.50 an hour for non-union electrical work. He currently works approximately 36 to 40 hours per week, and lives with his girlfriend and two children – a two-year-old and a four-month-old. Mr. Stephens is the father of the four-month-old child. In addition, Mr. Stephens pays court-ordered child support in the amount of $485.51 for a one-year-old child who does not live with him. His take-home pay is approximately $300.00 per week after $112.00 per week is deducted from his paycheck for the child support.

In addition to working full-time, Mr. Stephens has begun taking business and finance classes from the University of Phoenix. He expects it will take two years to complete his degree, and he is financing the education with financial aid and student loans.

At the trial, Mr. Stephens noted that he would have continued working for a union employer, but was unable to do so after being laid off for approximately three months. He felt he could no longer wait for a union job to come along and took a job with a non-union employer in order to support his family.

Because the family's total financial situation is relevant to the undue-hardship determination, the court must also consider the non-debtor partner's financial contribution to the household. *Walker v. Sallie Mae Serv'g Corp. (In re Walker)*, 427 B.R. 471, 485 n.40 (B.A.P. 8th Cir. 2010). Mr. Stephens' live-in girlfriend works in the child care business. As a result, they do not have daycare expenses for the two children living with them. However, in addition to paying child support for his non-custodial child, Mr. Stephens also is required to pay child care expenses of approximately $250.00 per month. Mr. Stephens' girlfriend pays some of the utility and food expenses, and earns in the neighborhood of $1,000.00 to $1,200.00 per month.

At trial, Mr. Stephens pointed out that his financial situation is actually somewhat different than shown in his schedules. Specifically, he testified that his rent obligation is now $585.00 per month, automobile insurance for him and his girlfriend is $170.00 per month, and that his child support was understated on his schedules by $85.00 per month.

To summarize, the numbers (which were not challenged by Plaintiff) presented at trial are as follows:

| MONTHLY INCOME | AMOUNT |
|---|---|
| Mr. Stephens' take-home pay | $ 1,200.00 |
| Mr. Stephens' girlfriend's take-home pay | $ 1,200.00 |
| Total combined income (after child support deduction) | $ 2,400.00 |

| MONTHLY EXPENSES | AMOUNT |
|---|---|
| As shown on Schedule J | $ 1,705.00 |
| Additional child support (understated on Schedule J) | $ 85.00 |
| Additional automobile insurance (for second car) | $ 110.00 |
| Additional rent (increased post-filing) | $ 300.00 |
| Additional child care expense for non-custodial child | $ 250.00 |
| Total family expenses | $ 2,450.00 |

Of the expenses listed by Mr. Stephens, the only expenses which were challenged by Plaintiff were two expenses listed on Schedule J. On that schedule, Mr. Stephens listed $100.00 for "Recreation, clubs and entertainment, newspapers, magazines, etc." In addition, Mr. Stephens listed a $40.00 per month expense for "Internet." Plaintiff believes that both of those expenses are unnecessary and unreasonable. According to Plaintiff, if those expenses were reduced by more than $50.00 per month, Mr. Stephens should be able to afford some minimal payment to Plaintiff.

I disagree. First of all, it is important to remember that Mr. Stephens is appearing pro se. Accordingly, he is entitled to a certain amount of leeway with respect to meeting his burden of proof. Mr. Stephens acknowledged that his expenses in several categories are probably higher than what he listed in his schedules, in addition to those previously discussed. One such category certainly is the "food" category, which is listed at $300.00 per month. It is apparent that Mr. Stephens completed his schedules, including Schedule J, on the basis of his personal expenses. However, this court needs to consider the total picture of Mr. Stephens' financial resources and expenses, and the $300.00 food expense per month is certainly well understated for a household of two adults and two children. The bottom line is that it is clear from the numbers, whether you count only the income and expenses of Mr. Stephens alone, or the entire income and expenses of his household unit, Mr. Stephens' expenses on a monthly basis exceed his income regardless of whether the recreation and internet expenses are reduced.

Accordingly, the final question is whether Mr. Stephens' reasonable future financial resources will sufficiently cover payment of his student loan debt while still allowing for a minimal standard of living. As discussed previously, this requires special consideration of Mr. Stephens' present employment and financial situation, along with the prospect of future changes.

There is no doubt that since Mr. Stephens is only 25 years old, he has many years left to improve his financial situation. However, he has three children, ages two and younger, for whom he provides support and will continue to provide support for the foreseeable future. In addition, while Mr. Stephens is attempting to improve his financial situation by taking night classes in an accelerated program at the University of Phoenix, that program has just begun and is being financed through a variety of financial aid, including more student loans. Therefore, since he is currently working full-time in the field for which he is trained and in light of the uncertainty and expense related to raising young children, it is difficult to see any substantial improvement in Mr. Stephens' financial position in the foreseeable future. Accordingly, I find that excepting the debt to Plaintiff from discharge would impose an undue hardship on Mr. Stephens and his dependents.

IT IS, THEREFORE, ORDERED that judgment should be entered in favor of Mr. Stephens discharging the indebtedness owed to Plaintiff. Separate judgment to be entered.

DATED:  April 12, 2011.

BY THE COURT:

/s/ Thomas L. Saladino
Chief Judge

Notice given by the Court to:
    John Wesley Stephens
    *Thomas J. Freeman
    U.S. Trustee

Movant (*) is responsible for giving notice to other parties if required by rule or statute.